(28 Misc. Rep. 690.)

### DANNHAUSER v. WALLENSTEIN.

(Supreme Court, Special Term, New York County. August, 1899.)

INSURANCE—ASSIGNMENT OF POLICY BY WIFE.

> An assignment by a wife of a policy of insurance in her favor on the life of her husband will not be held void because made without the husband's written consent, as required by Laws 1879, c. 248, where it appears that his oral consent was given, and the assignment made for a consideration received by him, and for the purpose of enabling him to maintain a business and support his family.

Action on policy of life insurance by one Dannhauser against Rosa Wallenstein. Judgment for plaintiff.

John Frankenheimer, Nathan Ottinger, and Edgar J. Kohler, for plaintiff.

Martin Paskusz, for defendant.

RUSSELL, J. The widow, Rosa Wallenstein, defendant, repudiates the assignment to the plaintiff of one of several life insurance policies obtained by her husband, Moses Wallenstein, deceased, on his life, for her benefit, upon the ground that the assignment was void, as not being made with the written consent of her husband. The original policy was issued to him by the New York Life Insurance Company, on the 30th day of June, 1873, for the sum of $10,000; was afterwards assigned by him to his wife, the defendant; and in the year 1878, the husband being, as he thought, unable to continue the premiums on his policies, at his instance the wife surrendered the original policy to the company, and took out for the same a paid-up

policy for $4,105.    On the 12th day of September, 1879, the defendant assigned the paid-up policy to Isaac Hamburger.    In the year 1895, Hamburger assigned the policy to his wife, who, the same year, assigned the same to the plaintiff.    On the 6th day of January, 1898, the husband, Moses Wallenstein, died; the plaintiff assignee brought an action against the New York Life Insurance Company for the amount of the policy; defendant obtained an order to interplead the present defendant, and paid the amount of the policy into court; and now the controversy rests between the plaintiff assignee and the defendant widow.

Policies of life insurance are property of a peculiar character.    The design of their creation flows into the legal consideration of all matters touching their availability as vendible assets.    Prior to the married woman's act of 1848, and the subsequent enlarging statutes, the wife was under disability as to contract and property rights.    She might, through the intervention of a trustee, bargain with reference to separate property, and effect insurances upon life or property. Chapter 80 of the Laws of 1840 gave her the direct legal right to insure the life of her husband for her own benefit, and, after the emancipatory acts of 1848 and 1860, chapter 821 of the Laws of 1873 empowered her to execute an assignment of a policy of insurance on the life of her husband in case she had no children.    By chapter 248 of the Laws of 1879, she was empowered to execute such assignments, whether she had children or not, with the written consent of her husband, whose life was insured.    Her assignment of the policy in question was made the same year as the later statute, and had no written consent of her husband at that time.    Hence it is argued in her behalf that such assignment was void; while, on the other hand, it is maintained that this policy was not taken under the act of 1840, as there was at the time of its issue no disability existing on the part of the wife from making any lawful contract, and the statute which was designed to relieve the wife from a disability could no longer apply to a woman who was free to contract.

But this construction does not give sufficient force to the fact that the act of 1879 was passed at a time when the wife was free to make a contract, and in that act it was embedded that the written consent of the husband should be had.    It must always be remembered that the body of the law is judicial in its character, both in the construction of statutory law and in the declaration of constructive principles of law.    The statutes of 1840, 1873, and 1879 were based upon principles of public policy, and in recognition of the underlying law.    Policies of life insurance for dependent wives and children were allowed, sanctioned, and enforced to meet the objects of their creation, and necessarily there should be taken from their quality as property certain features of assignability to prevent destruction of such objects.    This principle has been lately distinctively recognized by the appellate division of the supreme court in the First department, in holding that a gratuity fund for the widow and children was, under the broad principles of public policy, not assignable.    McCord v. McCord, 40 App. Div. 275, 57 N. Y. Supp. 1049.    And, in a case decided by the late general term for the Third department (Leonard v.

Clinton, 26 Hun, 288), it was decided that a policy taken out for the benefit of the wife and children was not subject to her creditors, although one taken by the husband, payable to his legal representatives and assigned to her, was so subject to the extent of the surrender value at the time of the assignment. Before the act of 1879, the assignment by the wife of a life insurance policy was void. Brick v. Campbell, 122 N. Y. 338, 25 N. E. 493; Miller v. Campbell, 140 N. Y. 457, 35 N. E. 651. It has also been held by our court of appeals that a policy on the husband's life, payable to the legal representatives, goes to the widow and children, and not to the administrators (Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464); and that the provision as to nonassignability without the written consent of the husband is so far personal and protective that the wife's creditors cannot avail themselves of the nonassent of the husband to such assignment (Smillie v. Quinn, 90 N. Y. 492). Nor can she take advantage of a stipulation in the policy itself that it shall be nonassignable. Such a provision is for the benefit of the insurance company alone. Spencer v. Myers, 150 N. Y. 269, 276, 44 N. E. 492. The policy payable to the wife passed at her death, by common-law right of survivorship, to the husband, unaffected by the act of 1840 and the act of 1873, even though there were children. Olmsted v. Keyes, 85 N. Y. 593. It seems to have been the policy of the law, rounded out by statutory and judicial construction, that a husband and wife might secure such provisions for the benefit of the dependent family, inalienable without the joint consent, and that the husband's acquiescence in the transfer of a policy payable to her on his life was an essential feature to the legality of a transfer in the proper consideration of what was suitable for the wife and children, although that husband's living interest in the subject ceased the moment the benefits from the policy were realized. It would be therefore a construction devoid of inquiry into the deeper principles upon which the rights of such property are founded to hold that the governing principle of the law would necessarily apply to a policy of insurance taken out by a wife on the life of her husband, with premiums continuously paid by her, in which case his written consent was essential to an assignment, and that such a requirement need not be had where the husband himself secures the policy, where it originates by his act and is sustained by his substance. The reason of the rule applies more forcibly in the latter instance than in the former.

But the same spirit of the law must be followed in determining the remaining question in this case, as to what the written consent of the husband in the act means. Policies of insurance on life are assignable, except where peculiar reasons forbid. Steinback v. Diepenbrock, 158 N. Y. 24, 52 N. E. 662. Therefore the reason and extent of any restriction must be weighed. A mere writing, unfortified by an intelligent consciousness of the act, would be valueless. The written consent of the husband is required in order that emphatic proof of his free participation in the act of assignment by the wife shall be had. The law requires the substance and not the form. Many cases arise under the statute of frauds in which even courts of law prevent the technical objection of the statute to defeat substan-

tial justice. Execution of contracts orally made, and part performance without capacity of restitution, accomplish the same result as the strict execution of a contract, within the terms of the statute. It was for this husband and wife to deal with this policy of insurance as they might deal with the others upon his life, within the fair policy of the law to meet not only the emergencies of death, but those of life also. And when the creditor not only surrenders claims against the husband, but pays him in addition a large sum of money ($3,000), for this policy of insurance, to enable him to maintain a business life and support his family, a court will not say that the general theory of the law in regard to the nonassignability of policies of insurance is broken, without at least proof, which is here absent, of untoward results. That husband had put into that policy of insurance and its predecessor, of which the present policy was the net result, his money to make it valuable. The time came when he deemed it wise to use its value for business purposes, and his united assent, with hers, to the assignment of a policy of insurance, the outcome of one he had by written assignment previously transferred to her, and his delivery to the assignee for a valuable consideration, with her written assignment transferring it, substantially met the requirements of the law, as the protector joined with the protected in a transaction then deemed favorable to their mutual interests; and now, after the lapse of 20 years, when the claim of the assignee for his original obligations against the husband, and the amount advanced by him, has become valueless by time, no court of equity will destroy his valuable interest in this policy of insurance, to aid a technical objection which is not founded on the principle of law upon which this statute rests. If the writing of a consent by the husband was essential, what defense could that husband or wife have had to an action of specific performance by the first assignee for the execution of such a consent, after he had parted with his property upon the faith of the contract? Judgment is given for the plaintiff, with costs.

Judgment for plaintiff, with costs.